### WALLACE & REED V. REED BROS.

Decided March 17, 1909.

**1.—Partners—Note—Power to Borrow Money.**

A member of a partnership entered into merely for the purpose of operating a cotton gin, not for trading, has no implied authority to bind the firm by a promissory note for borrowed money.

**2.—Same—Question of Fact.**

Evidence considered and held to present a question of fact as to whether the business engaged in by a partnership in running a cotton gin embraced also the purchase of cotton and cotton seed· on account of the firm; the power of one partner to borrow money on its note should have been left to the jury. Reed Bros. v. Wallace & Reed, 101 S. W., 1198, distinguished.

**3.—Statement of Facts—Costs.**

Costs on appeal occasioned by the appellant's failure to bring up a lawful statement of facts, and by his proceedings to correct such mistake, should be taxed against appellant, though he was successful.

Appeal from the District Court of Bell County. Tried below before Hon. John M. Furman.

The ruling on motion permitting the filing of the original statement of facts herein was in accordance with the opinion of the Supreme Court on certified question. Wallace & Reed v. Reed Bros., 102 Texas, 314.

*Durrett & Pendleton,* for appellants.—The express terms of the partnership contract between Mrs. Wallace and R. J. Reed limited the partnership business to the operation of the cotton gin owned jointly by the partners for the sole purpose of ginning and baling cotton for toll to be collected in seed cotton, cotton seed or money; and provided, that Mrs. Wallace should furnish all money needed for partnership purposes. It is elementary that one partner of such a partnership can not execute a promissory note in the firm name which will bind another partner without express authority. Randall v. Meredith, 76 Texas, 683.

*A. J. Harris & A. M. Monteith,* for appellees.—Regardless of what was the private partnership agreement between Mrs. Wallace and R. J. Reed, these parties engaged in a business which, according to the way it was usually conducted in the vicinity of the place where their business was carried on, became a trading or commercial business and their partnership a trading partnership as to all persons dealing with them without notice of their private agreement; and the debt incurred by overdrafts on Reed Brothers and the giving of notes to cover the same was binding on the partnership and the individual members. Randall v. Meredith, 76 Texas, 669; Beach on Partnership, 327.

KEY, Associate Justice.—Appellees brought this suit against appellant, Mrs. Eliza Wallace and one R. J. Reed, seeking to recover upon a promissory note executed by R. J. Reed in the name of the firm of Wallace & Reed.

Mrs. Wallace filed an answer in which she denied the execution of the note, denied the authority of R. J. Reed to borrow money and execute a note in the firm name of Wallace & Reed, denied that there was any partnership between herself and R. J. Reed for the purchase and sale of cotton and cotton seed for profit or otherwise, and alleged that the only partnership that existed between them was for the purpose of operating a cotton gin, and was a nontrading partnership.

The undisputed testimony shows that the note sued on was given

for borrowed money obtained by R. J. Reed, and used by him while operating and at the gin in purchasing cotton and cotton seed. It was also shown that Mrs. Wallace did not sign the note, nor authorize R. J. Reed to borrow the money or sign the note, otherwise than as such authority might result from the fact that he was her partner.

Like the case of Reed Bros. v. Wallace & Reed, heretofore decided by this court and reported in 101 S. W. Rep., p. 1198, the liability of Mrs. Wallace depends upon one question, and that is whether or not the purchase and sale of cotton and cotton seed was within the apparent scope of the partnership. In other words, whether or not the contract of partnership, and the manner in which the business was conducted, made it a trading partnership. If it did R. J. Reed had the power to sign the firm name and bind the firm by the execution of the note, and if it did not, he had no such authority. In the former case the testimony being undisputed and all in favor of Reed Bros., we reversed and rendered judgment for them. At the trial of this case, and on account of our decision in the former case, the trial judge instructed a verdict for Reed Bros., and that instruction is assigned as error.

The testimony in this case is different in some material respects from that contained in the former record. In that case the uncontroverted testimony showed that by the terms of the contract of partnership R. J. Reed was to conduct the business as it had been conducted by Mrs. Wallace's husband, who had recently died; and it was shown by like testimony that Mr. Wallace in operating the gin purchased cotton and cotton seed in substantially the same manner as was afterwards done by R. J. Reed while conducting the business for himself and Mrs. Wallace. It was also proved in the former case and by uncontroverted testimony, that it was the custom of those operating gins in that vicinity and at the time under consideration, to buy cotton and cotton seed. In this case there was much testimony to the same effect, but there was some tending to the contrary; and the testimony of Mrs. Wallace and one or two other witnesses tended to show that Mr. Wallace, while he operated the gin, did not purchase any cotton and took cotton seed only for the purpose of compensation for ginning the cotton.

Such being the condition of the evidence, and without intimating any opinion as to how the case should be decided, we hold that it should have been submitted to the jury, and that the trial court committed error in directing a verdict for the plaintiffs.

The transcript contains a copy of the statement of facts, which appellees have moved to strike out because the existing law regulating the subject requires the original statement of facts to be filed in this court and prohibits the same being copied in the transcript. That motion has been sustained. (Texas & P. Ry. Co. v. Stoker, 113 S. W., 3.)

On the same day that the motion referred to was filed, appellant tendered to the clerk of this court the original statement of facts and filed a motion asking to have it considered as part of the record in this cause, and, if necessary, to issue a writ of certiorari. That motion has also been sustained to the extent of permitting the original

statement of facts to be filed here and considered by this court. In view of these facts, we do not think appellees should be required to pay all the costs of this appeal. An appellant is responsible for the condition of a transcript prepared for him and ·by him filed in the Appellate Court; and in this case, if the law had been complied with, about seventy-eight percent of the transcript would have been omitted, and neither the motion to strike out nor the motion for certiorari would have been filed in this court. Hence, the costs resulting from filing the two motions referred to and seventy-eight percent of the cost of the transcript will be adjudged against appellants. All the other costs of the appeal will be adjudged against appellees.

For the error pointed out the judgment will be reversed and the cause remanded.

*Reversed and remanded.*