### WILLIAMS et ux. v. BALLARD et al.

#### No. 4833.

Court of Civil Appeals of Texas.
Beaumont.

March 19, 1953.

John O. Young, Orange, for appellants.

Homer E. Stephenson, Orange, Edward C. Carrington, Beaumont, for appellees.

PER CURIAM.

A. C. Williams and wife, Jeanne Toups Nash Williams, brought this appeal from a judgment in the District Court of Orange County against them and in favor of Marion C. Schwaner, Mary A. E. Schwaner, Charles H. Schwaner, A. L. Ballard, Ernest Reeves, C. E. Wigington, J. T. Seal, J. H. Holliman, Alfred J. Clark, F. L. Reeves and Ovie Reeves, George Saltzman and Teddy W. Savage. The transcript is endorsed "Marion C. Schwaner, et al, appellants, versus A. L. Ballard, et al, appellees." The cause is docketed as "A. L. Ballard, et al versus Marion. C. Schwaner, et al." The appellant on his brief labels the case as "A. L. Ballard, et al, appellees, versus A. C. Williams, et al, appellants." The appeal before us, however, is that of A. C. Williams and his wife as appellants and all the other parties named above as appellees.

The appellees A. L. Ballard and nine others, the holders of general warranty deeds to various parcels of land given by Marion C. Schwaner, Mary A. E. Schwaner and Charles H. Schwaner, brought suit in July, 1951, in trespass to try title against the three named Schwaners, and also against the said A. C. Williams and his wife, and in the alternative prayed that if Mr. and Mrs. Williams did own an undivided interest in the lands in suit, that they, the original plaintiffs, be awarded damages against the three Schwaners for partial failure of title under the general warranties in their deeds to such plaintiffs. The Schwaners answered by general denial and plea of not guilty, the 3–5–10 and 25 year statutes of limitation, Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519, all against Mr. and Mrs. Williams, but in their pleading recognized the validity of their warranties as to Ballard, et al. The Schwaners also filed a cross-action against Mr. and Mrs. Williams for title to the land involved and also to remove cloud from their title. Mr. and Mrs. Williams

answered such petition of the original plaintiffs Ballard, et al. by pleas of not guilty and the 3–5–10 and 25 year statutes of limitation. They further specially pleaded that they had acquired title to a one-fourth undivided interest in the lands in question by a deed dated December 11, 1930 to Mrs. Williams, who was then Jeanne Toups Nash, from one C. H. Nash; they also pleaded that said lands are further described in a certain deed from Mary C. Friedenhaus, et al. dated December 31, 1909; they further pleaded that they had given oil, gas and mineral leases, right-of-way deeds and otherwise enjoyed dominion and control over the lands in question.

The case was tried to a jury. At the outset of the trial the parties stipulated that Mr. H. C. Schwaner, deceased, was the common source of title of all of the parties to the suit. The evidence showed without controversy that appellees Marion C. Schwaner, Mary A. E. Schwaner and Charles H. Schwaner, the widow and two children of H. C. Schwaner, were his sole surviving heirs.

The controversy in the suit was narrowed down to the determination of whether C. L. Nash, deceased, was the owner in his lifetime of a one-fourth interest in the lands in suit by virtue of a partnership agreement with H. C. Schwaner, deceased. The trial court submitted its Special Issue No. 1 to the jury which was as follows: "Do you find from a preponderance of the evidence that H. C. Schwaner and C. L. Nash owned the property in controversy as partners prior to February 5, 1903?" To this issue the jury answered "No." Since the other two issues submitted by the court were submitted to be answered only if the above Special Issue No. 1 was answered "Yes" no other questions were answered by the jury. On the jury's verdict the court entered judgment in favor of the original plaintiffs Ballard, et al. and in favor of the three Schwaners named above against the appellants Williams, removing as a cloud on their title the claim of the said Williams. After their motion for new trial was overruled, the appellants duly perfected their appeal.

Appellants bring their appeal under four Points of Error. Their first point is that "the trial court erred in entering judgment for the plaintiffs and cross-plaintiffs for the reason that the verdict is contrary to evidence adduced at time of trial." Their second point is that "the court committed error in rendering judgment for appellees, because, though the burden of proof was upon appellees to prove superior title in a trespass to try title suit, appellees offered no evidence of superior title." We will discuss these two points together since they are both concerned with the evidence and the legal effect thereof.

The various parcels of land involved here, as to the claims of the original plaintiffs Ballard, et al. were partial lots out of a 100-acre tract of land acquired in 1903 and 1904 by H. C. Schwaner, the common source of title. Mr. Schwaner during his lifetime for a few years beginning in 1903 and 1904, was in partnership with C. L. Nash, who is now deceased. In maintaining this business they bought and sold lands, all of the lands being bought in the name of H. C. Schwaner. By an instrument dated February 5, 1905 C. L. Nash and H. C. Schwaner executed a dissolution of partnership agreement, by the terms of which Mr. Schwaner succeeded to all of the assets and assumed all of the liabilities of the partnership. H. C. Schwaner, during his lifetime, disposed of 25 acres out of the 100-acre tract by deeds to other parties and by dedication to the public streets and alleys. After the date of the partnership dissolution agreement, C. L. Nash did not join H. C. Schwaner in the execution of any conveyance or deed or in other instrument of writing involving partnership lands. C. L. Nash died in May, 1924. H. C. Schwaner died December 19, 1927. The 75 acres out of the 100-acre tract remaining after the conveyance of 25 acres was listed in the inventory in the H. C. Schwaner Community survivorship proceedings in Jefferson County where Mr. Schwaner lived at the time of his death. C. H. Schwaner, one of the appellees, about one week after his father's death, discovered among his father's papers an

unrecorded deed from Mary C. Friedenhaus and other heirs of E. Friedenhaus, deceased, to H. C. Schwaner, granting an undivided half interest in the two 50-acre tracts of land originally acquired by H. C. Schwaner. This deed was dated December 31, 1909 and contained the following reference: "An undivided one-half interest in the above described two tracts of land herein conveyed, being the same two tracts conveyed to the said E. Friedenhaus and C. L. Nash during the month of December, 1903, and during the year 1904, which deed or deeds were duly acknowledged but not recorded, and have either been lost or destroyed." This instrument called by the parties throughout the testimony and in their briefs "the Friedenhaus deed" appears to be the starting point of the controversy between the Williamses and the Schwaners. C. L. Nash died in Houston in May, 1924. By his will he designated the Houston Land & Trust Company as trustee of his estate. When the trust company filed an inventory in the county court of Harris County it listed as an asset of the estate of C. L. Nash an undivided one-fourth interest in the 100 acres in Orange County which is in suit. The trust company gave its deed as trustee under the will of C. L. Nash to C. H. Nash, son of C. L. Nash, for a one-fourth interest in the property in suit. That was in July, 1929. In September, 1930, C. H. Nash, who is now deceased, conveyed the property to his daughter who is now Mrs. Williams, the appellant. The property was never occupied either personally or by tenants, by either C. L. Nash, C. H. Nash, Mrs. Williams or the trust company. None of these parties paid taxes on the property in consecutive years before delinquency.

In the year 1930 the Schwaners gave an oil and gas lease on the property to Harry Lucas in which they warranted their title to be at least a three-fourths undivided interest. The same year Harry Lucas took an oil and gas lease from the Williams. In 1943 by separate instruments the Schwaners and the Williamses gave a pipe line easement to the Arkansas Pipe Line Corporation and in 1945 and 1948, by separate instruments, they gave easements to Defense Plant Corporation. In their brief the appellants say that they claim record title to the lands in question by virtue of the deed from Mary C. Friedenhaus, et al., dated December 31, 1909, and also by virtue of the chain of title consisting of the deed from the Houston Land & Trust Company to C. H. Nash and a deed from C. H. Nash to Jeanne Toups Nash Williams, and the various leases executed by the appellants to Harry Lucas and the easements to Defense Plant Corporation and Arkansas Pipe Line Corporation and a mineral lease from appellants to Magnolia Petroleum Company in September, 1951. We have examined the instruments relied upon by the appellants and nowhere in any of them do we find any conveyance of the land in suit into C. L. Nash, grandfather of Mrs. Williams. There is no record title to the lands involved in Mrs. Williams or her father or her grandfather. In their argument under this first Point of Error the appellants argue that the court was in error in not allowing them to submit Special Issues based upon the 3–5–10 and 25 year statutes of limitation. This argument is wholly groundless because the transcript shows no Special Issues requested by the appellants and no act of the trial court refusing to submit any issues such as are mentioned by the appellants in their brief. There were no exceptions or objections to the court's charge by the appellants and, therefore, they can not now be heard to complain of the court's charge for the first time on appeal. No possession or use of the land was shown which would have warranted the trial court in submitting any issue based on any of the statutes of limitation. When the appellants say that they depend upon their record title they are compelled to depend upon such title as was owned by C. L. Nash, the grandfather of Mrs. Williams. The Friedenhaus deed does not convey anything to C. L. Nash. Since the appellants have stipulated that H. C. Schwaner was the common source of title and the proof shows that the appellees Schwaner were his sole surviving heirs and that he died intestate they thus showed good title to the lands in the Schwaners, unless there

was some conveyance out of H. C. Schwaner or out of one of the three appellees Schwaner to Mrs. Williams or to someone under whom she claimed. There was no evidence whatever of any title deraigned from H. C. Schwaner to the Williamses in the land in suit. Therefore the only way in which, under all the evidence here, the Williamses might have been the holders of some interest in the lands in suit was by virtue of an equitable title which Mrs. Williams' grandfather, C. L. Nash, may have owned in the lands by virtue of the partnership. The trial court undoubtedly took this view of the evidence also and since the agreement dissolving the partnership had been denounced in the pleadings of the appellants as a forgery the appellees made proof by a former associate of Mr. Nash and Mr. Schwaner as to the genuineness of the two signatures of that ancient document. It was further proved up by the evidence that it had been in the continuous possession of appellee Charles H. Schwaner since his father's death. The argument of the appellants that the appellees failed to show superior title is groundless. The appellees fully discharged their burden of proof in that regard and thereafter it became the burden of the appellants to show that they had some title to the lands in controversy. This they did not do. No fact issue was raised by the evidence in regard thereto. By the jury's verdict, however, it was found as a fact that Mr. C. L. Nash did not own any interest in the land prior to the date of the dissolution agreement. Appellants' Points 1 and 2 are both overruled.

Appellants' third Point of Error is that "the trial court erred in overruling defendants' objection to the introduction as evidence of an alleged dissolution of partnership between H. C. Schwaner and C. L. Nash for the reason that such instrument was never proved up according to legal or admissible testimony and was immaterial to the case at bar as not pointing out any lands in Orange County." Their fourth Point of Error is that the trial court erred in overruling such objections for the reason that such instrument was never seen by the witness testifying as to its genuineness before the day of the trial and such witness in no manner proved or could prove its execution, nor did such witness in a legal manner qualify as a handwriting expert. The only objection we find in the statement of facts made by counsel for the appellants to the introduction of the partnership dissolution agreement was the following:

The witness Brock testified that the signatures on the instrument were those of C. L. Nash and H. C. Schwaner. When counsel for appellees offered the instrument in evidence counsel for appellants stated: "We have the same objection as to materiality." The court's ruling was "I will go along with you." Counsel for both parties indicate that they think he agreed with each of them. It is clear, however, that the court received this instrument in evidence and properly so, and the only objection made by appellants was, as given above, "the same objection as to materiality." Since the materiality of this instrument is apparent on its face and from all the other evidence in the case, we think the court was correct in overruling appellants' objections. Since the other arguments and objections brought forward under appellants' third point in their brief were not presented to the trial court, it is not necessary to discuss these other objections here. The objections brought forward under appellants' fourth point were not presented to the trial court, since the only objection made was "as to materiality;" however, the argument is groundless. Since Mr. Brock, the witness testifying as to the genuineness of the signatures, said that he did not see the men sign the instrument and since Mr. Schwaner, the son, after testifying that he had possession of the instrument since the death of his father, but had not seen it executed because it was done before he was born, the appellants argue, there was no proof of execution. They point out that as was held in the case of De Martinez v. De Vidaurri, Tex.Civ.App., 219 S.W.2d 823, the purported date of the document did not prove the age of the document so as to render the document admissible in evidence as an ancient document without proof of execution, in the absence of other

proof that the document was 30 years old. We think from the other surrounding facts and circumstances the appellees made by other evidence, including the testimony of witness Brock, that the instrument was more than 30 years old. However, this objection was not urged at the trial and the point shows no error.

We believe that the appellants have brought forward no showing of reversible error, and the judgment of the trial court is affirmed.